UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| KIMBERLY Y.,[1] | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-cv-00145-KMB-SEB |
| | ) |
| MARTIN J. O'MALLEY,[2] | ) |
| | ) |
| Defendant. | ) |

**ENTRY REVIEWING THE COMMISSIONER'S DECISION**

Plaintiff Kimberly Y. applied for disability insurance benefits and supplemental security income from the Social Security Administration ("SSA") on April 24, 2020, alleging an onset date of December 31, 2019. [Dkt. 8-5 at 2-10.] Her application was initially denied on November 17, 2020, [dkt. 8-3 at 17, 33], and upon reconsideration on August 26, 2021, [*id.* at 37-51]. Administrative Law Judge Dwight Wilkerson (the "ALJ") conducted a hearing on February 10, 2022. [Dkt. 8-2 at 38.] The ALJ issued a decision on March 30, 2022, concluding that Kimberly was not entitled to receive disability insurance benefits or supplemental security income. [*Id.* at 23.] The Appeals Council denied review on September 8, 2022. [*Id.* at 2.] On November 10, 2022, Kimberly timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g) and 28 U.S.C. § 1361. [Dkt. 1.]

---

[1] To protect the privacy interests of claimants for Social Security benefits, and consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first names and last initials of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Federal Rule of Civil Procedure 25(d), Martin J. O'Malley automatically became the Defendant in this case when he was sworn in as Commissioner of the Social Security Administration on December 20, 2023, replacing Acting Commissioner of the Social Security Administration Kilolo Kijakazi.

## I. STANDARD OF REVIEW

"The Social Security Administration (SSA) provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Stephens*, 888 F.3d at 327. "[S]ubstantial evidence" is "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). "[E]ven under deferential standard of review for social security disability cases, an [ALJ] must provide a logical bridge between the evidence and [the] conclusions." *Jarnutowski v. Kijakazi*, 48 F.4th 769, 773 (7th Cir. 2022) (internal quotations omitted).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

## II.  RELEVANT BACKGROUND

Kimberly was sixty-one years old on the alleged onset date. [Dkt. 8-3 at 2.] She previously worked as an eligibility worker and social welfare administrator.[3] [Dkt. 8-2 at 22.]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 404.1520(a)(4) and 20 C.F.R. § 416.920(a)(4) and concluded that Kimberly was not disabled. [*Id.* at 13-23.] Specifically, the ALJ found as follows:

- At Step One, Kimberly had not engaged in substantial gainful activity since December 31, 2019, the alleged onset date. [*Id.* at 13.]

- At Step Two, Kimberly had the following severe impairments: coronary artery disease status/post myocardial infarction, degenerative disc disease, obesity, and seizure disorder. [*Id.*]

- At Step Three, Kimberly did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [*Id.* at 15.]

- After Step Three but before Step Four, Kimberly had the RFC "to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can never climb ladders, ropes, or scaffolds.  She can only occasionally climb ramps or stairs; balance; stoop; kneel; crouch, or crawl.  She needs to avoid concentrated exposure to temperature extremes.  She can do no work at unprotected heights.  She can do no commercial driving.  She can do no work around dangerous machinery." [*Id.* at 16.]

- At Step Four, relying on the testimony of a vocational expert ("VE") and considering Kimberly's RFC, Kimberly was capable of performing her past relevant work as an eligibility worker and social welfare administrator.[4] [*Id.* at 22.]

---

[3] The ALJ did not discuss Kimberly's education level in the decision, and the Parties have also not provided her education level in their briefs.  The relevant evidence of record is set forth in the Parties' briefs and need not be repeated here.  Specific facts relevant to the disposition of this case are discussed below as necessary.

[4] Having found that Kimberly could perform her past relevant work, the ALJ did not proceed to Step Five and determine whether there were jobs that existed in significant numbers in the national economy that Kimberly could have performed.

### III.  DISCUSSION

Kimberly presents two arguments challenging the ALJ's decision.  First, Kimberly argues that the ALJ erred by failing to explain why he rejected a consultative examiner's opinion that Kimberly was limited to lifting/carrying ten pounds on an occasional basis.  [Dk. 13 at 7.]  Second, Kimberly argues that the ALJ erred by failing to explain how she could perform her past work despite finding that she has seizures at a frequency that the VE testified would require accommodations beyond those provided in the RFC.  [*Id.* at 10.]  The Court will address the issues as necessary to resolve the appeal, beginning with the first because the Court finds it to be dispositive.

**A.  Rejection of Consultative Examiner's Opinion**

Kimberly claims that the ALJ erred by failing to explain why he rejected consultative examiner Dr. Jacobs' opinion that she was limited to lifting or carrying only up to ten pounds.  [Dkt. 13 at 7.]  According to Kimberly, the ALJ provided no analysis of Dr. Jacobs' finding beyond his "boilerplate" conclusion that "while it was opined that the claimant could lift/carry '10 pounds on an occasional basis,' this does not appear well supported by or consistent with the record on whole at hearing level."  [Dkts. 13 at 7; 8-2 at 21.]  Kimberly argues that the ALJ did not point to any evidence that refutes Dr. Jacobs' opinion that she was limited to lifting/carrying up to ten pounds on an occasional basis.  [Dkt. 13 at 8.]  In fact, Kimberly claims that the record contains signs of dyspnea, fatigue with minimal exertion, and reduced strength throughout her body, which are consistent with Dr. Jacobs' opinion.  [*Id.*]  Kimberly argues that the ALJ's failure to adequately discuss Dr. Jacobs' finding is problematic because his finding concerns an exertional limitation, and the relevant regulation—SSR 96-8p—requires ALJs to describe how the evidence supports each conclusion about a strength limitation by citing specific medical and non-medical evidence.

5

[*Id.* at 8-9 (citing *Jarnutowski*, 48 F.4th 769, 773-74).] Kimberly claims that in discrediting Dr. Jacobs' finding, the ALJ erred by not pointing to any specific evidence and instead baldly stated that the finding was not supported by the record. [*Id.* at 8.]

In response, the Commissioner contends that Kimberly's primary complaint during her testimony was that she could not sit or stand for very long, not that she had difficulty with lifting or carrying. [Dkt. 14 at 9.] The Commissioner claims that Kimberly regularly denied having weakness, and during Dr. Jacobs' examination she exhibited only slightly diminished strength and normal motor movements. [*Id.* at 10.] The Commissioner also asserts that the ALJ summarized the treatment record, which showed that Kimberly's physical examinations were generally unremarkable and that she demonstrated normal gait. [*Id.*] Contrary to Kimberly's position, the Commissioner argues that the ALJ pointed to direct evidence that conflicted with Dr. Jacobs' opinion, and the ALJ also noted that he had the opportunity to consider the whole record, including more recent assessments that Kimberly could perform light work. [*Id.*] In sum, the Commissioner claims that the record evidence supports the ALJ's finding that Kimberly could perform the lifting/carrying requirements of light work, and the ALJ provided sound reasons in finding Dr. Jacobs' opinion not persuasive. [*Id.* at 9-11.]

In her reply brief, Kimberly reasserts that the ALJ's decision must be remanded because that ALJ failed to explain his rejection of Dr. Jacobs' opinion. [Dkt. 15 at 1.] While the Commissioner points to evidence in the record that the ALJ might have been able to cite to refute Dr. Jacobs' lift/carry finding, Kimberly emphasizes that the ALJ did not actually cite any of that evidence himself, and the Court is prohibited from relying on a rationale that was not used by the ALJ to affirm the ALJ's decision. [*Id.*] Kimberly also claims that it was not sufficient for the ALJ

6

to generally point to more recent state agency assessments without adequately explaining how such assessments supposedly contradict Dr. Jacobs' finding. [*Id.* at 2.]

"SSR-96-8p[] lists seven strength functions that an ALJ must consider when assessing a claimant's RFC," including a claimant's lifting and carrying abilities. *Jarnutowski*, 48 F.4th at 773-74. Under SSR 96-8p, an ALJ must "describe how the evidence supports each conclusion [about a strength function], citing specific medical facts (*e.g.*, laboratory findings) and nonmedical evidence (*e.g.*, daily activities, observations)." *Id.* at 774 (internal quotation marks omitted). "An ALJ's failure to comply with SSR 96-8p's requirements is a sufficient basis, by itself, for [a court] to reverse an ALJ's decision." *Id.* "[A]n ALJ's RFC analysis 'must say enough to enable review of whether the ALJ considered the totality of a claimant's limitations.'" *Id.* (quoting *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021)). "The ALJ has a duty to fully develop the record before drawing any conclusions and must adequately articulate her analysis so that we can follow her reasoning." *Minnick v. Colvin*, 775 F.3d 929, 938 (7th Cir. 2015).

The Court agrees with Kimberly that the ALJ did not adequately explain his reasoning in rejecting Dr. Jacobs' opinion that she was limited to lifting or carrying ten pounds on an occasional basis. The only analysis the ALJ provided with respect to Dr. Jacobs' opinion was that he found it not "well supported by or consistent with the record on whole at hearing level." [*See* dkt. 8-2 at 21.] Rather than pointing to any specific evidence that the ALJ believed contradicted Dr. Jacobs' opinion, the ALJ merely cited "Section F" and "see above" to support his conclusion. [*Id.*] The Seventh Circuit Court of Appeals has explained that this type of cursory analysis is not sufficient. *See Jarnutowski*, 48 F.4th at 776 (finding that the ALJ erred in discrediting a physician's opinion on the claimant's lifting limitations because the ALJ merely provided that "the opinion was inconsistent with the longitudinal record" and "fail[ed] to point to any direct evidence in the

7

longitudinal record that rebut[ted] [the doctor's] opinion"). Accordingly, the Court agrees that the ALJ's failure to adequately explain his rejection of Dr. Jacobs' opinion with respect to Kimberly's lifting/carrying ability warrants remand. *Id.* ("The ALJ's failure to provide adequate reasoning for rejecting Jarnutowski's testimony and Dr. Kelikian's opinion as to Jarnutowski's lifting and carrying capabilities is a sufficient basis for reversal.").

The Court rejects the Commissioner's arguments to the contrary. The Commissioner argues that the record evidence supports the ALJ's decision, but the Court cannot discern what evidence the ALJ relied on in finding that Dr. Jacobs' opinion was inconsistent with and unsupported by the record. In fact, the ALJ cited record evidence throughout the decision that tends to support Dr. Jacobs' opinion on Kimberly's carrying/lifting abilities. [*See* dkt. 8-2 at 18 (noting that "[t]here was reported signs of dyspnea and fatigue with minimal exertion" and that Kimberly exhibited reduced 4/5 strength) (internal quotation marks omitted).] Nevertheless, the Commissioner points to evidence of Kimberly's normal gait and generally unremarkable physical examinations, and he says that Kimberly often denied weakness. But the ALJ did not cite that evidence in rejecting Dr. Jacobs' opinion, and the Court declines to consider whether the Commissioner's post hoc rationales could have justified the ALJ's decision to discredit Dr. Jacobs' opinion. *See Smith v. Astrue*, 467 F. App'x 507, 510-11 (7th Cir. 2012) (rejecting the Commissioner's "post hoc rationalization" of the ALJ's RFC analysis because "what matters are the reasons articulated *by the ALJ*, not the rationale advanced by the government on appeal") (original emphasis) (internal quotation marks omitted).

The Court is also unpersuaded by the Commissioner's argument that remand is not warranted because Kimberly primarily complained of her inability to sit or stand for very long. While it is true that Kimberly expressly testified about her difficulties standing and sitting, this did

not relieve the ALJ of his duty to build an accurate and logical bridge between the evidence presented and his finding that Dr. Jacobs' opinion was not persuasive. 48 F.4th at 773-74. In other words, it was the ALJ's duty to consider Dr. Jacobs' opinion and explain why he found it unpersuasive, given that Dr. Jacobs' opinion was not consistent with the RFC that the ALJ used in his decision. Because he did not do this, the Court concludes that it must remand the decision.

While the ALJ claims he "had the opportunity to consider the record on whole at hearing level," including more recent state agency assessments, the ALJ did not explain if or how these assessments contradicted Dr. Jacobs' findings. Regardless, "[a]n ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Accordingly, the Court finds that the ALJ did not provide a sufficient analysis in finding Dr. Jacobs' opinion unpersuasive. Because Dr. Jacobs' opinion is not consistent with the RFC that the ALJ used in the decision, and without providing an adequate explanation for why that opinion was rejected, the Court finds that remand is warranted.

### B. Other Arguments

Having found that remand is necessary for the reasons detailed above, the Court declines to address Kimberly's remaining arguments. Kimberly may raise her other concerns on remand as appropriate.

### IV. CONCLUSION

For the reasons explained above, the Court **REVERSES** the ALJ's decision denying Kimberly benefits and **REMANDS** this matter to the Social Security Administration. Final judgment shall issue accordingly.

**SO ORDERED.**

Date: 2/5/2024

*Kellie M. Barr*

Kellie M. Barr
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email